**Daryl B. LUNDGRIN, Plaintiff-Appellant,**

v.

**W. Graham CLAYTOR, Secretary of the Navy of the United States, and the United States, Defendants-Appellees.**

No. 78–1628.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 24, 1980.

Decided April 8, 1980.

Virginius Dabney, McMillan & Browning, Salt Lake City, Utah, for plaintiff-appellant.

Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, for defendants-appellees.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Dr. Daryl B. Lundgrin filed a complaint in district court seeking to enjoin the Navy

from ordering him to active duty before completion of the civilian residency program in which he had enrolled. In denying Lundgrin's request for a preliminary injunction, the court concluded that the language of Lundgrin's enlistment contract vested complete discretion in the Navy to disallow a deferment for civilian residency training. Lundgrin contends on appeal pursuant to 28 U.S.C. § 1292 that the district court erred in denying his motion for a preliminary injunction. Our review of the record, however, convinces us that the district court did not abuse its discretion, and its order denying the injunction should be affirmed.

In 1973, Lundgrin, a first-year student at the University of Oklahoma Medical School, was accepted into the Armed Forces Health Professions Scholarship Program (Scholarship Program) by the Navy's Bureau of Medicine and Surgery. He thereafter executed the Armed Forces Health Professions Scholarship Program Service Agreement (Agreement), which is the contract setting forth the terms of his agreement with the Navy. In return for the Navy's promise to pay certain educational expenses connected with his medical training,[1] Lundgrin agreed to serve one year on active duty for each year of participation in the Scholarship Program, or a total of four years.

In his final year of medical school, Lundgrin applied for residency programs to receive specialized training in pathology. As required by the Agreement, he requested a residency in the Navy. However, he simultaneously indicated his preference for a civilian residency program and applied for a deferment of his active service obligation until 1981, when he anticipated completing a four-year civilian pathology residency.

Although Lundgrin's application for the Naval Residency Pathology Program was denied, he was subsequently accepted for a civilian pathology residency at the University of Utah Affiliated Hospital. Nevertheless, the Navy rejected Lundgrin's application for a four-year active duty deferment to complete the civilian residency because the Navy needed general medical officers on active duty and had no current or projected shortage of pathologists. However, Lundgrin was granted a one-year deferment to permit him to complete a year of graduate medical education.

Lundgrin contends that once the Navy granted him a one-year deferment from active duty, the plain terms of the Agreement required the Navy to grant him the additional three years in order to complete his civilian residency. Alternatively, he asserts that the Agreement is ambiguous on this point and his parol testimony regarding promises made to him by Navy recruiters must therefore be credited in determining whether to grant a preliminary injunction.

## I.

### Reviewability of Enlistment Contracts

■ The Navy argues initially that Lundgrin is asking the courts to interfere improperly with internal military affairs. The general rule is that discretionary military decisions concerning soldiers lawfully in the service are beyond the review of civilian courts. *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). It has long been held, however, that civilian courts will construe the rights and obligations arising under an enlistment contract. *United States v. Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890); *Quinn v. Brown*, 561 F.2d 795 (9th Cir. 1977); *Shelton v. Brunson*, 465 F.2d 144 (5th Cir. 1972). And *see Pfile v. Corcoran*, 287 F.Supp. 554, 557 (D.Colo.1968), where the court, recognizing that an enlistee's status changes from civilian to soldier at the moment of enlistment, stated that this ". . . change of status does not invalidate the contractual obligation of either party or prevent the contract from being upheld, under proper circumstances, by a court of law."

■ We hold that a claim alleging breach of an enlistment contract is not an internal

---

1. The Scholarship Program paid medical school tuition, fees, books and laboratory expenses. In addition, it provided Lundgrin with a stipend of $400 a month.

military affair and is properly reviewable in the civilian courts.

## II.

### Denial of Motion for Preliminary Injunction

The function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties. *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181 (10th Cir. 1975); *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780 (10th Cir. 1964). Since the grant or denial of a preliminary injunction is within the sound discretion of the trial court, we may set aside the court's action only if it constituted an abuse of discretion. *Id.*

In defining what a movant must show to support the grant of a preliminary injunction, we have said:

"In hearings upon motions for temporary or preliminary injunctive relief, the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The applicant has the additional burden of showing a right to the specific injunctive relief sought because of irreparable injury that will result if the injunction is not granted. *There must exist a probable right and a probable danger.*"

*Crowther v. Seaborg*, 415 F.2d 437, 439 (10th Cir. 1969) (emphasis added). This test has often been expanded into four prerequisites which the moving party must establish: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. 7 Moore's Federal Practice ¶ 65.04[1]; 11 Wright & Miller, Federal Practice and Procedure § 2948. And *see e. g., Sierra Club v. Hathaway*, 579 F.2d 1162 (9th Cir. 1978); *Hardin v. Houston Chronicle Publishing Co.*, 572 F.2d 1106 (5th Cir. 1978).

Here the district court carefully reviewed Lundgrin's case in terms of the four stated requirements. Rec., supp. vol. II, at 24–32. Although the judge found that Lundgrin met his burden on three of these factors, he concluded that Lundgrin failed to demonstrate a likelihood of success on the merits.

Where the movant prevails on the other factors, this court has adopted the Second Circuit's liberal definition of the "probability of success" requirement:

" 'To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.' "

*Continental Oil Co.*, 338 F.2d at 781–782 (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)).

Lundgrin asserts that this case presents "a fair ground for litigation" within the meaning of *Continental Oil Co.* because the Navy breached the terms of the Agreement by refusing to grant him a four-year deferment to complete his civilian residency. If this were so, denial of a preliminary injunction by the trial court would constitute an abuse of discretion.

We may consider the merits of the case only insofar as they bear upon the question of sound judicial discretion. *Id.; United States v. Brown*, 331 F.2d 362 (10th Cir. 1964). Since the district court's decision not to grant a preliminary injunction was based on its reading of the Agreement, we must review that interpretation to determine whether it constituted an abuse of discretion.

The Agreement provides as follows with respect to residency training:

"1. Having volunteered for participation in the Armed Forces Health Professions

Scholarship Program, I hereby acknowledge:

\* \* \* \* \* . \*

g. That, if I desire intern or residency training, I will apply for such training in the Navy at such time as applications are being accepted from other officers in my category. If selected, I am required to participate in such training programs in an active duty status. If not selected, I may then apply to remain in an inactive status or to be released from active duty to complete such training in a civilian institution. If selected to complete such training in an inactive status, I understand that I will not be entitled to any pay, allowances or educational expenses from the Navy and that I will be entitled to accept the normal stipends and benefits paid to other trainees in my training institution.

\* \* \* \* \* \*

"2. I consent to serve on active duty after completion of my course of study under this program and when ordered by the Chief of Naval Personnel for the following minimum periods of time:

a. One year for each academic year of participation (12 months or less) but in no case less than two years.

\* \* \* \* \* \*

"3. I understand that, should I be accepted for intern or residency or other postgraduate training of six months or more in duration, the period of such training will not reduce my scholarship obligation. At the end of my internship or residency or other postgraduate training, I will serve my scholarship obligation or for a period of two years, whichever is longer. I will not tender my resignation or request release from active duty until I shall have completed the obligated service so acquired, in addition to any other service obligation."

The district court found the Agreement here to be unambiguous and susceptible of only one meaning. It pointed out that although a participant in the Scholarship Program may "apply" for deferment from active duty in order to complete civilian residency training, he has no right under paragraph 1(g) of the Agreement to participate in such training unless "selected" by the Navy for a deferment from active duty status. Rec., supp. vol. II, at 28–29. Here the Navy denied Lundgrin's application for a four-year deferment.

Lundgrin argued, on the other hand, that even assuming the Navy could initially deny his application for a four-year deferment, once it offered him a deferment for one year to pursue postgraduate medical training, he then had a right to *complete* the four-year program before serving his military obligation. He based that assertion on the language from paragraph 1(g) of the Agreement which states: "If not selected [for Naval residency training], I may then apply to remain in an inactive status . . to *complete* such training in a civilian institution." (Emphasis added). He also pointed to language in paragraph 3: "*At the end of my internship or residency* or other postgraduate training, I will serve my scholarship obligation . . . ." (Emphasis added).

The district court disagreed and held that a more careful reading of the Agreement precludes Lundgrin's interpretation. Rec., supp. vol. II, at 31. The court construed paragraphs 1(g) and 3 to mean only that once the Navy selects a Scholarship Program participant for a full four-year deferment for civilian residency training, it may not thereafter decide to order him to active duty before completion of his residency training. *Id.* It concluded further that the one-year deferment granted Lundgrin to permit him a limited amount of practical experience before being called to active duty could not be construed as a selection for *completion* of residency training. *Id.* Having thus interpreted the Agreement to authorize either the complete denial of a deferment or the granting of a one-year deferment for limited postgraduate training, the district court concluded that Lundgrin had failed to show probability of success on the merits and denied the motion for a preliminary injunction.

We have carefully reviewed the record as a whole. Although we express no views on the merits of the case, we find no abuse of discretion on the part of the district court in its conclusion that Lundgrin failed to demonstrate a likelihood of success on the merits. Accordingly, we affirm the denial of a preliminary injunction.