**Christopher E. LONGSTRETH, Plaintiff–Appellant,**

v.

**Gary MAYNARD; Stephen Kaiser; Susan Gilbert, Unit Manager; David Rowden, Unit Manager; Bob Affolter, Correctional Counselor, Defendants–Appellees.**

**C.D. MOSIER, Plaintiff–Appellant,**

v.

**Gary MAYNARD, D.O.C.; Dan M. Reynolds, Warden, Defendants–Appellees.**

**Allen JUSTUS, Plaintiff–Appellant,**

v.

**Gary N. MAYNARD, Warden; Steve Hargett, Deputy Warden; Frank Marks, Chaplain; Donald Lankford, Food Supervisor, Defendants–Appellees.**

Nos. 91–6370, 91–6374 and 91–7044.

United States Court of Appeals, Tenth Circuit.

April 6, 1992.

---

F. Browning Pipestem, Norman, Okl., for plaintiffs-appellants Longstreth and Justus in Nos. 91–6370 and 91–7044.

In No. 91–6370, Gay Abston Tudor, Asst. Atty. Gen., and in No. 91–7044, Guy L. Hurst, Asst. Atty. Gen., Deputy Chief, Civ. Div. (Susan B. Loving, Atty. Gen. of Okl. with them on the brief), Oklahoma City, Okl., for defendants-appellees Maynard, et al.

C.D. Mosier, pro se.

F. Browning Pipestem, Norman, Okl., for plaintiff-appellant C.D. Mosier in No. 91–6374.

Susan B. Loving, Atty. Gen. of Okl., and Gay Abston Tudor, Asst. Atty. Gen., Oklahoma City, Okl., for defendants-appellees Maynard et al. in No. 91–6374.

Before McKAY, Chief Judge, HOLLOWAY, Circuit Judge, and BELOT, District Judge *.

HOLLOWAY, Circuit Judge.

I

The plaintiffs-appellants Justus, Longstreth, and Mosier are all prisoners in the custody of the Oklahoma Department of Corrections (the Department). Each plaintiff claims that his religious beliefs preclude the cutting of his hair. Since 1986 the Department has had a general grooming policy, stated in various regulations applying to male inmates, which forbids all beards, mustaches, and hair more than three inches in length. The original policy provided a procedure for granting exemptions to those whose religious beliefs required them to keep their hair uncut. Each of these three plaintiffs was denied an exemption under that procedure.

Plaintiff Justus brought his action under 42 U.S.C. § 1983 in the Eastern District of Oklahoma, requesting injunctive relief and compensatory and punitive damages. Justus challenged the Department's grooming code and its failure to provide him with a vegetarian diet. He claimed both policies interfered with his religious observances as a member of the Holy American Church of the Essene. The district court found the dietary claim to be insubstantial and frivolous and, on the hair claim, deferred to the Department's determination that the grooming code was essential to prison security and order, and the court then dismissed the complaint. Justus appealed, and this court affirmed the dismissal of the dietary claim but remanded for more fact finding on the grooming issue. *Justus v. Maynard*, No. 86–2849 (10th Cir. 4–25–88) (per curiam). After further proceedings, the Department moved for summary judgment on the grooming claim. The district court granted the motion on March 7, 1991. The instant appeal in No. 91–7044 followed. Moreover, an application was made for injunctive relief by this court pending this

* The Honorable Monti L. Belot, United States District Judge for the District of Kansas, sitting by designation.

appeal. On October 30, 1991, this court entered an order enjoining the defendants from implementing the grooming code against Justus pending this appeal. Further facts concerning this appeal will be detailed below.

In October 1991 plaintiff Longstreth, having been denied a religious exemption to the grooming code, brought suit against the Department under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 in the Western District of Oklahoma. He sought damages, declaratory relief, and preliminary and permanent injunctive relief to prevent the Department's grooming code from being enforced against him. The district court denied a preliminary injunction on November 1, 1991. In a memorandum opinion issued later, the court found that because the grooming code was a reasonable response to legitimate penological objectives, Longstreth was not substantially likely to succeed on the merits and thus was unable to establish that he was entitled to a preliminary injunction. The instant appeal in No. 91–6370 followed.[1]

Mosier originally applied for and was granted an exemption from the prison grooming code in 1986. In 1989 he was required to make a new application. That application was denied for failure to provide adequate documentation from sources outside of prison of the sincerity of his belief in the Native American Church. He initiated this action under 42 U.S.C. §§ 1983, 1996, and 1997 in January 1990 in the Western District of Oklahoma seeking injunctive relief, *inter alia*. The defendants moved for summary judgment, which the district court granted. On appeal, this court reversed and remanded, holding that genuine issues of material fact remained. *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir.1991). Subsequently, in October 1991, Mosier sought a preliminary injunction below to prevent the enforcement of the

grooming code against him. The district court denied the request, finding that the new "no exemption" policy, initiated September 11, 1991, mooted Mosier's complaint of the denial of his exemption under the earlier policy. The instant appeal in No. 91–6374 resulted.

These three appeals of Longstreth, Mosier, and Justus have been consolidated by this court for briefing and argument and will all be decided by this opinion.

## II

■ The defendants in Nos. 91–6370 and 91–6374, the appeals of Longstreth and Mosier, have suggested that those appeals are moot. They point out that on January 14, 1992, there was a change in the grooming code policy, reinstating provisions for seeking religious exemptions. The defendants say that in the district court Longstreth and Mosier alleged they were wrongfully denied religious exemptions under the grooming code as it was before September 11, 1991, when it was changed to remove provisions for seeking such exemptions; that Longstreth's and Mosier's claims of unlawful denial of exemptions to them remain alive below, pending adjudication on the merits; and that the only issue on appeal now in their cases is the denial of preliminary injunctive relief against the post-September 11, 1991 grooming policy permitting no exemptions, which issue is now moot because that policy was changed with the January 14, 1992 reinstatement of the availability of religious exemptions. Motion to Dismiss at 3.

Plaintiffs Longstreth and Mosier respond, opposing dismissal of their appeals for mootness and arguing that the issues are capable of repetition yet evading review because of the Department's policy changes. They say the cases should be

---

1. At argument we were advised of an order entered on February 24, 1992, which has been furnished to us. The order stated that in the interests of justice the action should be stayed for 90 days to allow Longstreth to apply for an exemption under the new grooming code instituted on January 14, 1992. The order states that during this time period, "the defendants shall take no adverse action against plaintiff by reason of his failure to adhere to the grooming code." The order concludes that Longstreth's claims with respect to the no exemption policy that was in existence from September 4, 1991, through January 13, 1992, are dismissed as moot.

reversed so that they may obtain interlocutory relief maintaining the status quo pending an adjudication of their claims on the merits by preventing the cutting of their hair under whichever grooming policy is in effect. Plaintiffs'–Appellants' Response at 3. Other facts pertinent to the mootness issue follow.

As noted, in September 1991 the grooming code was amended to eliminate religious exemptions from the code. On January 7, 1992, in *LeFors v. Maynard*, No. CIV–91–1521–R, Western District of Oklahoma, the court found after trial that the evidence did not support a finding that the anticipated security concerns of defendants are rationally related to the grooming code imposing a hair length regulation with no religious exemption. Memorandum Opinion at 5–6.[2] The court could not find that the hair length restrictions, insofar as they interfere with sincerely held religious beliefs, are rationally related to state interests in promoting order and rehabilitation in its penal institutions. *Id.* at 6–7. There was no evidence at trial of any widespread security problem related to long hair in any part of the prison system. *Id.* at 10.

The *LeFors* opinion found the trial witnesses from the Department of Corrections to be credible and knowledgeable and that the court should give great deference to their opinions on how the prison system should be run. However, the court concluded that "the grooming policy complained of, at this time, is not rationally related to legitimate penological interests, but is instead an exaggerated response to concerns which are purely hypothetical."

The court found the "current grooming policy is an unconstitutional intrusion upon religious freedom insofar as it is applied to those inmates whose sincerely held religious beliefs prohibit the cutting of their hair." *Id.* at 14. Citing trial testimony, the court stated: "According to the Plaintiffs' sincerely held religious beliefs, cutting the hair is a sin which can have 'serious consequences.'" (footnote omitted). The defendants were enjoined from enforcing the hair-length provisions of the grooming code against plaintiffs LeFors, Hansford and Pelley.[3] The district judge retained jurisdiction for two years or until further order of the court to permit notification by defendants of any undue burden on them or that security has become a more realistic threat. *Id.* at 15.

The defendants' motion to dismiss advises us that on January 14, 1992, one week following the *LeFors* opinion, a further revision was made to the Inmate Grooming Code by the Department of Corrections.[4] It restates the requirement generally for male inmates that hair will be cut and all facial hair removed. Hair will not touch the shirt collar, will not touch or cover the ear, and will not exceed three inches in length. Beards and mustaches are prohibited. Hair styles for female inmates will comply with prevailing community standards.

This new regulation provides an exemption request process to "accommodate those inmates whose religious beliefs conflict with the requirements of the grooming code." An inmate must apply to obtain an exemption, and a review committee then

---

2. In their Answer and/or Supplemental Briefs filed March 3, 1992, in the three instant appeals, objection is made to recitations in the plaintiffs' Opening Brief to findings in the *LeFors* opinion. The defendants argue in their Answer Brief that *LeFors* was decided subsequent to the rulings on appeal here and that the Memorandum Opinion was unpublished and cannot be considered precedential; it is requested that references to *LeFors* be stricken. Answer Brief of Defendants–Appellees at 2.

We cannot agree that reference to the *LeFors* opinion is inappropriate. In their Motion to Dismiss Nos. 91–6370 and 91–6374, filed February 13, 1992, by the Attorney General's Office, a summary of the *LeFors* ruling was given in the

motion and a copy of the *LeFors* opinion was furnished us by the State as an attachment to the Motion to Dismiss. The case was discussed at argument of these appeals, by both sides, with no objection to the references made to it. We find no restriction in the rules of the United States District Court for the Western District of Oklahoma respecting the citation of the court's unpublished opinions.

3. The court made no class action certification. *Id.* at 1, note 1.

4. We have been advised by a representation from the Attorney General's Office that the State is not appealing the *LeFors* ruling.

consider the applications. The inmate must submit an essay stating reasons why the exemption should be granted, specifying the religion of which he is a practicing member, and detailing why he cannot comply with the grooming code and be an adherent of his faith. The committee's review includes consideration of affidavits, and an interview and evaluation whether the inmate's personal belief is sincere, meaningful and religious in nature, *inter alia.*

In addition to furnishing us the new regulation with their motion to dismiss for mootness, the Attorney General's representatives have advised us that the State has no intention of appealing the *LeFors* decision. As noted, these circumstances are relied on for the suggestion of mootness by the defendants.

We are unable to agree that we should dismiss the appeals of Longstreth and Mosier for mootness. These plaintiffs' complaints and applications for interlocutory relief are not confined to a challenge to the "no exemption" policy which was instituted on September 11, 1991. Longstreth and Mosier instead seek equitable relief against the cutting of hair under any circumstances, due to their religious beliefs. The Department's regulations must be taken into account, but the changing regulations do not moot the basic controversy sufficiently to justify dismissal of these appeals from the denial of preliminary injunctive relief, in our judgment.

We feel Mosier's and Longstreth's claims are distinguishable from the circumstances in *DeFunis v. Odegaard,* 416 U.S. 312, 317–18, 94 S.Ct. 1704, 1706–07, 40 L.Ed.2d 164. There a racial discrimination suit challenging law school admissions practices resulted in injunctive relief ordering the student's admission. The state and federal court litigation continued into the last term

of his courses. A professional representation by the State convinced the Supreme Court that in no event could the status of the student be affected by any view the Court might express on the merits of that controversy. *DeFunis* recognizes, however, the continuing vitality of the proposition that the " 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot.' " *DeFunis,* 416 U.S. at 318, 94 S.Ct. at 1706 (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). The Court reasoned that a voluntary cessation of the admissions practices complained of could make the case moot only if it could be said with assurance that there is no reasonable expectation that the wrong would be repeated. *DeFunis,* 416 U.S. at 318, 94 S.Ct. at 1706–07. *DeFunis* was held moot because a voluntary change in policy was not involved; instead, mootness was shown because the student was in the final quarter of his course of study and the settled policy of the school permitted him to complete the term in any event. 416 U.S. at 318, 94 S.Ct. at 1706–07.

Here, the circumstances do not afford such an assurance that the threatened harm may not recur. These plaintiffs, Longstreth and Mosier, were denied exemptions under the last regulation which contained exemption procedures. Moreover, the Department's policy has varied considerably.[5] In these circumstances, we cannot agree that we should dismiss their instant appeals as moot because we do not feel it shown to be absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 n. 10, 102 S.Ct. 1070, 1074 n. 10, 71 L.Ed.2d 152 (rejecting mootness ar-

---

**5.** When plaintiff Justus filed his suit in April 1986, all inmates in the Oklahoma State Penitentiary were required to comply with the Grooming Policy. Thereafter, inmates were allowed to apply for and be granted a religious exemption to the policy. In September 1991, the Grooming Policy was changed again and all exemptions were abolished. In January 1992, the policy

was revised again and applications for exemptions were permitted. *See* Appellee's Answer Brief in No. 91–7044, filed November 18, 1991.

As recognized in our disposition herein, on remand it may be required that the plaintiffs, Longstreth, Justus, and Mosier, utilize the new exemption procedure provided for by the January 14, 1992 regulation.

gument where language challenged as unconstitutionally vague was repealed during pendency of litigation). We feel that Longstreth's and Mosier's circumstances are within the principle stated in *City of Mesquite*, 455 U.S. at 289, 102 S.Ct. at 1074–75: "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Accordingly, we deny the motion to dismiss for mootness the appeals of Longstreth and Mosier.

### III

In No. 91–7044, we review de novo the district court's grant of summary judgment against Justus. *Osgood v. State Farm Mutual Automobile Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Rusillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991).

The basic standard, as the parties agree, for determining the constitutionality of prison regulations which infringe prisoners' religious practices is that enunciated by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). There the Court held that a prison regulation which burdens an inmate's constitutional rights is valid if the regulation is reasonably related to legitimate penological interests. *Id.* at 89, 107 S.Ct. at 2261. The relevant factors are: First, there must be a valid rational connection between the prison regulation and the legitimate government interest put forward to justify it. Second, we must consider whether there are alternative means of exercising the right that remain open to prison inmates. Third, a relevant factor is the impact accommodation of the asserted constitutional right will have on other inmates and guards, and on the allocation of prison resources generally. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *Turn-*

*er v. Safley*, 482 U.S. at 89–90, 107 S.Ct. at 2261–62.

Applying *Turner*, we have upheld application of the grooming code at an intake prison facility and the position of the prison officials that the average stay there of only ten days made an exemption process infeasible. *Hall v. Bellmon*, 935 F.2d 1106, 1114 (10th Cir.1991). Based on an affidavit from Gary Parsons, Associate Director of the Department of Corrections, the district court here found that the grooming code was adopted to promote uniformity, discipline, and personal hygiene among the inmates and to guarantee prison security by reducing the possibility of inmates quickly altering their appearance or concealing contraband.

As opposed to this showing by the defendants, Justus and the other plaintiffs rely on the findings in the *LeFors* case and the deficiencies in that trial record as found by the trial judge. Opening and/or Supplemental Briefs of Plaintiffs–Appellants at 13, 14. The plaintiffs argue that the justification for the grooming policy thus failed the fourth prong of the test in *Turner v. Safley*, 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2262–63, 96 L.Ed.2d 64 (1987)—whether an alternative to the general grooming code is available which would accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. Other arguments were made that the grooming code should not be upheld because it had been adopted for political reasons and that the exemption process itself demonstrated that uniformity of hair style was not essential to prison security or discipline.

We are persuaded that the defendants' showing concerning the necessity for the grooming code as a general policy was not met sufficiently by the plaintiff Justus to raise a genuine issue of material fact. While we noted earlier that we do not feel the references to the *LeFors* opinion are inappropriate, the evidentiary record in that case is not a part of our record. The mere references to the findings made there and the policy arguments advanced by Justus do not demonstrate a genuine fact question concerning the general validity of

the grooming code. We therefore sustain the portion of the summary judgment against Justus finding the grooming code facially valid as a general penal regulation.

There remains, however, the additional holding in the summary judgment against Justus which upheld the denial to Justus of an exemption from the grooming code. Order Granting Defendants' Motion for Summary Judgment at 4–5. The order rejects the plaintiff's allegations that the policy has been applied in a discriminatory fashion. The district judge said that the prison authorities have denied Justus an exemption because he failed to provide required documentation showing that his belief is a recognized religion and that long hair and beard lengths are doctrines of such a religion. The judge concluded that the record supports the decision made by the prison authorities denying an exemption to Justus.

■ We have held, however, that factual findings of the prison administrative officials may not be substituted for fact finding by the court on disputed facts. *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (1983). Here we are convinced that there were genuine issues of material fact as to the religious nature of the belief of Justus and as to his sincerity in that belief. He submitted an affidavit and also a detailed brief with factual and legal analyses, verified under penalty of perjury, which meet the requirements of Fed.R.Civ.P. 56(e). *Mosier v. Maynard*, 937 F.2d 1521, 1524 (10th Cir.1991). The verified statements review the history of the Holy American Church of the Essene, which is identified by Justus as his belief. Verified Brief in Support of Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment at 2–5. Justus states there that at the hearing of his request for an exemption, a hearing officer merely stated that the Department of Corrections does not recognize his religion. *Id.* at 10. The verified complaint of Justus represented that his belief was the "cornerstone of his life."

Complaint at 19–20. In such circumstances, whether religious beliefs are sincerely held is then a question of fact. *Mosier v. Maynard*, 937 F.2d at 1526.

Accordingly, without expressing any views on the merits of Justus' claims, we hold that there were genuine issues of material fact as to the religious belief claimed by Justus and as to his sincerity in adhering to that belief. The summary judgment against Justus in No. 91–7044 must be reversed, and the case will be remanded for further proceedings on these fact issues.[6]

## IV

. In No. 91–6370 and No. 91–6374, plaintiffs Longstreth and Mosier both appeal the denial of their motions for preliminary injunctions forbidding the Department from cutting their hair under the "no exemption" policy. As the district court in both cases correctly held, the party seeking a preliminary injunction must demonstrate:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).

In Longstreth's case the district court assumed that the latter three factors had been satisfied. The court found that under the *Turner* factors, the "no exemption" policy was a reasonable response to valid penological goals. It thus concluded that there was not a substantial likelihood that Longstreth would succeed on the merits of his challenge. In Mosier's case the district court denied Mosier's motion without a full statement of findings of fact and conclu-

6. Because of its judgment in favor of the defendants on Justus' underlying constitutional cause of action, the district court did not need to reach the issue of the defendants' possible qualified immunity from Justus' claim for money damages. We do not reach the issue here and express no view on the merits of such a defense to the damages claims.

sions of law. The order denying the motion does indicate, however, that the reason for denying the motion was the court's conclusion that Mosier had failed to establish the substantial likelihood of his success on the merits.

We agree that the second, third and fourth factors set out in *Lundgrin* appear to be satisfied by Longstreth and Mosier. Therefore, our focus is on the first factor, the substantial likelihood that the moving party will eventually prevail on the merits. The requirement of a "substantial likelihood that the movant will eventually prevail on the merits" is relaxed in these circumstances. Where the movant prevails on the second, third and fourth factors, the first factor is relaxed to require only that the movant raise "questions so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *Lundgrin*, 619 F.2d at 63; see also *Koerpel v. Heckler*, 797 F.2d 858, 867 (10th Cir.1986). The impact of a prison regulation which may impinge on tenets of an inmate's religious beliefs and practices raises a serious and substantial question.[7] The question of whether the threatened infringement in these circumstances is reasonable under the standards articulated in *Turner* seems similarly "difficult and doubtful."

In their verified pleadings seeking preliminary injunctive relief from the grooming code, from which they were denied exemptions, Longstreth and Mosier made verified statements of their religious beliefs and their sincerity in adhering to them. They were denied exemptions under the earlier policy, and, under the current policy which does permit exemptions to be sought again, there are serious and substantial questions now raised by Mosier and Longstreth concerning their entitlement to injunctive relief to protect their religious beliefs and practices.[8]

While the defendants question the beliefs and sincerity of Longstreth and Mosier, we are convinced that Longstreth and Mosier have made a showing raising "questions so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *Lundgrin*, 619 F.2d at 63. The plaintiffs are entitled to preliminary injunctive relief.

## V

In sum, in No. 91–6374, *Mosier v. Maynard*, the district court's order denying Mosier's application for a preliminary injunction is reversed. His case is remanded to the district court with directions that a preliminary injunction should be entered restraining the defendants from enforcing the grooming code against plaintiff Mosier until the final disposition of his claims. The district court may, in its discretion, hold the Mosier case in abeyance and require that Mosier seek an exemption under the new code adopted by the defendants on January 14, 1992, reinstating the religious exemption procedure.

In No. 91–6370, *Longstreth v. Maynard*, the order of the district court denying Longstreth's application for a preliminary injunction is reversed and the case is remanded to the district court. As stated in note 1, *supra*, the district court has stayed Longstreth's case for 90 days to allow him to apply for an exemption under the new

---

7. Although religious challenges to prison grooming codes do not always succeed, courts have consistently held that at a minimum the challenges do raise significant claims which require full evidentiary development. *See, e.g., Gallahan v. Hollyfield*, 670 F.2d 1345 (4th Cir. 1982) (code unconstitutional because plaintiff able to identify a less restrictive alternative); *Teterud v. Burns*, 522 F.2d 357 (8th Cir.1975) (code unconstitutional because less restrictive means available); *Moskowitz v. Wilkinson*, 432 F.Supp. 947 (D.Conn.1977) (code held unconstitutional); *Wright v. Raines*, 457 F.Supp. 1082 (D.Kan.1978) (injunction granted); *Dreibelbis v. Marks*, 675 F.2d 579 (3d Cir.1982) (challenge was not frivolous and required further factual development); *Reed v. Faulkner*, 842 F.2d 960 (7th Cir.1988) (summary judgment inappropriate because prison officials failed to prove necessity of code to prison security).

8. As noted, the new grooming policy promulgated in January 1992 permits exemptions to be sought. As we are now deciding these appeals, we should consider the current state of the law. *See Texas Co. v. Brown*, 258 U.S. 466, 474, 42 S.Ct. 375, 377–78, 66 L.Ed. 721 (1922).

grooming code. A temporary order was entered on February 24, 1992, restraining any adverse action against Longstreth by reason of his failure to adhere to the grooming code. The district court should continue such injunctive relief for Longstreth until the final disposition of his claims.

In No. 91–7044, *Justus v. Maynard,* the summary judgment against plaintiff Justus is reversed and the cause is remanded for further proceedings to determine the fact issues of the religious character of Justus' beliefs and his sincerity in asserting those beliefs. The district court may, in its discretion, hold the Justus case in abeyance and require that Justus seek an exemption under the new code adopted by the defendants on January 14, 1992, reinstating the religious exemption procedure.

IT IS SO ORDERED.