**Robert B. REICH, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**DAYTON TIRE, A DIVISION OF BRIDGESTONE/FIRESTONE, INC., Defendant.**

**No. CIV–94–556–L.**

United States District Court, W.D. Oklahoma.

May 19, 1994.

Beck, Ellen D. Gregory, Michael F. Dolan, Jones Day Reavis & Pogue, Washington, DC, for defendant.

## MEMORANDUM OPINION

LEONARD, District Judge.

Plaintiff, Robert B. Reich, Secretary of Labor, brings this action for injunctive relief pursuant to section 13 of the Occupational Safety and Health Act of 1970 ("Act"), which provides that:

> The United States district courts shall have jurisdiction, upon petition of the Secretary, to restrain any conditions or practices in any place of employment which are such that a danger exists which could reasonably be expected to cause death or serious physical harm immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this chapter.

29 U.S.C. § 662(a). Plaintiff seeks an order requiring defendant, Dayton Tire, "to train its covered employees in appropriate lockout procedures, to provide them with locks, and to require that the employees utilize those locks and procedures when servicing the equipment." Pretrial Brief of the Secretary of Labor on Motion for Preliminary Injunction at 5.

On May 11–13, 1994, this court conducted an evidentiary hearing on plaintiff's motion for preliminary injunction. Also on May 13, 1994, the court viewed the Dayton Tire plant.[1] This opinion constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## BACKGROUND

Dayton Tire, which is a division of Bridgestone/Firestone, Inc., manufactures approximately 35,000 automobile tires per day at its plant in Oklahoma City, Oklahoma. The facility employs approximately 1,400 employees.

Sue Ann Wolff, Janice L. Holmes, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for plaintiff.

Leonard Court, Crowe & Dunlevy, Oklahoma City, OK, Willis Goldsmith, Thomas

---

1. The court was joined by counsel for plaintiff, Sue Ann Wolff; plaintiff's representative, William W. White, Jr., the Area Director for the Occupational Safety and Health Administration; counsel for defendant, Leonard Court; and Carmelita Shinn, the court's law clerk. The tour was conducted by defendant's representative, John Dougherty, Production Manager for Dayton Tire's Oklahoma City plant.

In May 1993, the Occupational Safety and Health Administration ("OSHA") began an inspection of the Oklahoma City plant. Deposition of Carlos Reynolds at 8.[2] In conjunction with that inspection, OSHA compliance officers Faye Kearney and Carlos Reynolds visited the plant in June and July 1993. *See* Exhibit 122. During the July 1993 on-site inspections, compliance officers Kearney and Reynolds noted alleged violations of OSHA's lockout/tagout standard. *See* Exhibits 62–69. The lockout/tagout standard, which is codified at 29 C.F.R. § 1910.-147, applies to "the servicing and maintenance of machines and equipment in which the *unexpected* energization or start up of the machines or equipment, or release of stored energy could cause injury to employees." 29 C.F.R. § 1910.147(a) (emphasis in original). With certain exceptions, the standard requires that equipment be turned off and energy sources be locked-out "to prevent unexpected energization, start-up or release of stored energy" during servicing and maintenance operations. 29 C.F.R. § 1910.-147(a)(3)(i). In addition, the standard mandates that employees receive training regarding the purpose and function of lockout/tagout procedures. 29 C.F.R. § 1910.147(c)(7). While compliance officers Kearney and Reynolds noted violations of both the substantive and training sections of the regulations, they did not mention such violations at the October 25, 1993 closing conference. Nor did they at any time indicate to Dayton Tire officials that the employees were in imminent danger as a result of such violations.

On October 19, 1993, Robert Julian, a Dayton Tire employee, was seriously injured at the facility and later died as a result of those injuries. That same day, OSHA Area Director William W. White, Jr. was informed by a media representative that a possible fatality had occurred at the Dayton Tire plant. Mr. White therefore directed compliance officer George McCown and safety supervisor Hugh Terrell to investigate the circumstances of the accident. As a result of

their investigation, the OSHA inspectors informed Dayton Tire that it was not in compliance with the lockout/tagout standard; neither inspector, however, indicated that such noncompliance placed the Dayton Tire employees in imminent danger.

Mr. McCown returned to the plant in November 1993 in response to an inspection referral from Ms. Kearney. In the referral, Ms. Kearney noted six areas of the Dayton Tire plant where possible lockout/tagout violations were occurring. Exhibit 61. The referral classified the violations as "serious" and described the hazards as:

> Employees are exposed continuously to the risk of being caught up or crushed by machinery & equipment in the following locations:
>
> a). Dept # 134—Set Up/Tire Assembly Machines throughout Tirerooms including Dept # 174, 173, 130/TAM Size Changer
>
> b). Dept # 133, Final Inspection/TUO Module Machine/Module Operator
>
> c). Dept # 132, Curing/Curing Press Machine/Mold Changer & Bladder Changers
>
> d). Dept # 112, Banbury/Banbury Mixer Machine/Belt Loader/Trucker
>
> e). Dept # 124, Beadbuilding/Beadforming Machine/Beadwinder
>
> f). Dept # 126, Tubing/BEI Extruder WSW Mills/BEI Extruder/WSW Mill Attendants
>
> g). Dept # 132, Tire Curing/Radial Doper Machines/Doper Attendant

*Id.* In response to this referral, Mr. McCown inspected the plant in the latter part of November 1993. No formal closing conference was held at the conclusion of his on-site inspection, but Mr. McCown did inform Kelly Mattocks, Dayton Tire's Safety and Security Manager, that Dayton Tire was not in compliance with the lockout/tagout standard with respect to these areas. At no time, however, did Mr. McCown indicate to Ms. Mattocks or to any Dayton Tire employ-

---

**2.** During the hearing, the parties stipulated that the depositions of the four OSHA compliance officers—Carlos Reynolds, Faye Kearney, Hugh Robert Terrell, and George McCown—would be admitted into evidence. In accordance with that agreement, the court has reviewed these depositions.

ee that the lockout/tagout violations placed the employees in imminent danger.

On April 18, 1994, Mr. White issued a 57 page citation to Dayton Tire seeking approximately $7.5 million in penalties for alleged violations of OSHA's lockout/tagout standard. Exhibit 28. At the same time, a "Notice of Alleged Imminent Danger (to Employer(s) and Employees)" was posted at Dayton Tire's Oklahoma City plant. Exhibit 27. This Notice reflected that

> it is alleged that an imminent danger to employees exists in that A DANGER EXISTS WHICH COULD REASONABLY BE EXPECTED TO CAUSE DEATH OR SERIOUS PHYSICAL HARM IMMEDIATELY or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by the Occupational Safety and Health Act of 1970 . . . .

*Id.* (emphasis in original). The Notice described the alleged imminent danger as:

> Employees engaged in setting-up, adjusting, cleaning, unjamming, modifying, maintaining and servicing machinery and equipment are exposed to the unexpected energizing, start up or release of stored energy and could be injured or killed in the following locations:
>
> 1) Compounding & Mixing
> 2) Tubing
> 3) Bead Winding
> 4) Tire Assembly
> 5) Curing
> 6) Final Inspection[.]

*Id.*

By letter dated May 3, 1994, Dayton Tire filed its Notice of Contest to "all citations, citation items, abatement dates, abatement methods and proposed penalties" contained in the April 18, 1994 Citation and Notification of Penalty. Exhibit 29. By contesting the Citation, Dayton Tire is exercising its right to review of the Citation before the Occupational Safety and Health Review Commission ("Review Commission"), which is indepen-

dent of the Department of Labor. 29 U.S.C. §§ 659(c), 661. It has been represented that adjudication of a contested citation before the Review Commission is a lengthy process, sometimes taking several years to conclude.

## DISCUSSION

Normally, the party seeking a preliminary injunction must satisfy the following prerequisites:

> (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). This case, however, differs from most injunction proceedings because the "merits" of the underlying dispute between the parties will not be decided in this forum. Rather, the issue of whether Dayton Tire has violated the lockout/tagout standard will be determined by an Administrative Law Judge ("ALJ") at the Review Commission. It will be the ALJ's task to determine if the lockout/tagout standard applies to certain operations performed by Dayton Tire employees; that issue is not before this court.

██ In this case, the four *Lundgrin* factors must be examined against the backdrop of the statutory requirement for issuance of an injunction. The court may issue an injunction only if it finds that conditions exist at the Dayton Tire plant that "are such that a danger exists which could reasonably be expected to cause death or serious physical harm *immediately* or before the *imminence* of such danger can be eliminated" through enforcement procedures under the Act.[3] 29 U.S.C. § 662(a) (emphasis added). Because the Act expressly provides for injunctive relief, plaintiff need not show irreparable harm; rather, he "need only show that the statutory

---

3. Plaintiff concedes that the conditions at the plant do not warrant an injunction under the first prong of section 13. Transcript of Proceedings at 375. Rather, plaintiff argues that death

or serious injury will occur due to defendant's failure to comply with the lockout/tagout standard during the time that it will take to adjudicate this case at the administrative level. *Id.*

conditions for the issuance of an injunction" are met. *Mical Communications, Inc. v. Sprint Telemedia, Inc.,* 1 F.3d 1031, 1036 (10th Cir.1993). That is, plaintiff must establish that the employees at the Dayton Tire plant are in imminent danger.

█ Neither the Act, nor the regulations define "imminent danger."[4] The court, however, is guided by the interpretation of the term in other contexts. For example, in regulations pertaining to discrimination against employees who exercise rights under the Act, OSHA has indicated that "imminent danger" must be viewed from the perspective of a reasonable person and that a real risk of death or injury must be present.[5] Likewise, in the Surface Mining Control and Reclamation Act of 1977, Congress

> defines the threat of "imminent danger to the health and safety of the public" as the existence of a condition or practice which could
>
>> "[r]easonably be expected to cause substantial physical harm to persons outside the permit area before such condition, practice, or violation can be abated. A reasonable expectation of death or serious injury before abatement exists if a rational person, subjected to the same conditions or practices giving rise to the peril, would not expose himself or herself to the danger during the time necessary for abatement."

*Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 301, 101 S.Ct. 2352, 2373, 69 L.Ed.2d 1 (1981). With this guidance, the court concludes that imminent danger within the meaning of the Act requires more than the "mere possibility"[6] that an employee may be injured. Rather, to establish imminent danger, plaintiff must show that a reasonable person would conclude that a real risk of injury or death exists because of the alleged lockout/tagout violations.

█ Based on the evidence presented, the court finds that plaintiff has failed to establish a prima facie case for issuance of an injunction. The testimony of plaintiff's own witnesses failed to demonstrate that the injuries that have occurred were due to Dayton Tire's alleged noncompliance with the lockout/tagout standard. In addition, not one witness testified that a real risk of future injury exists at the plant if machines are not locked out during the operations at issue.[7] It is noteworthy that employees and union representative—the people most knowledgeable about the machines and operations at issue here—have not indicated a belief that imminent danger exists at the Dayton Tire plant.[8] In addition, three out of the four compliance officers who personally inspected the plant have yet to conclude that imminent danger exists at the facility due to lockout/tagout violations.

In a work place that contains heavy machinery with moving parts and human operators, it is likely that injuries may occur in the future. Plaintiff, however, has failed to demonstrate that any such injuries—either those in the past or those that may occur in the future—are due to violations of the lockout/tagout standard. As such, plaintiff has failed to meet the statutory burden and thus is not entitled to the equitable relief he seeks.

### CONCLUSION

In short, plaintiff has failed to demonstrate entitlement to injunctive relief. Accordingly,

---

4. *See* 29 U.S.C. § 662; 29 C.F.R. § 1903.13.

5. *See* 29 C.F.R. § 1977.12(b)(2) ("The condition causing the employee's apprehension of death or injury must be of such a nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a real danger of death or serious injury....")

6. *See Industrial Union Dept. v. American Petroleum Institute,* 448 U.S. 607, 651–52, 100 S.Ct. 2844, 2868–70, 65 L.Ed.2d 1010 (1980).

7. Indeed, a number of employees testified that they cannot perform their required tasks without power. *See, e.g.,* Transcript of Proceedings at 73, 158, 516.

8. The Union has never filed a safety grievance regarding the lockout/tagout standard, nor has the Union ever filed a complaint with OSHA over Dayton Tire's alleged failure to comply with that standard.

plaintiff's Motion for Preliminary Injunction is DENIED.

It is so ordered.