VIDEO SOFTWARE DEALERS
ASSOCIATION, INC., et al.,
Plaintiffs,

The State of Oklahoma, ex rel. Oklahoma
Department of Libraries, Applicant
for Intervention,

v.

The CITY OF OKLAHOMA CITY,
et al., Defendants.

No. CIV-97-1150-T.

United States District Court,
W.D. Oklahoma.

Dec. 24, 1997.

Jon Epstein, Robert D. Nelon, Hall Estill Hardwick Gable, Golden & Nelson, Oklahoma City, OK, John T. Mitchell, Donald M. Barnes, Alan R. Malasky, Jenkins & Gilchrist, Washington, DC, Crossan R. Andersen, Video Software Dealers Association, Encino, CA, for Video Software Dealers Ass'n Inc.

Richard C. Smith, Municipal Counselor's Office, Oklahoma City, OK, for City of Oklahoma City, Sam Gonzales.

Robert E. Manchester, Stacey Haws Felkner, Susan A. Knight, Mancjester & Pignato, Oklahoma City, OK, for Sergeant French, Brett N. High, Se Kim.

John M. Jacobson, Patricia L. High, Dist. Attorney's Office, Oklahoma City, OK, for Robert Macy.

Michael A. Bamberger, Sonnenschein Nath & Rosenthal, New York City, for American Booksellers Foundation for Free Expression, Ass'n of American Publishers Inc., amicus.

## ORDER

RALPH G. THOMPSON, District Judge.

### Summary of Ruling

*The sole question addressed in this order is whether, under applicable constitutional law, it was lawful for the motion picture in issue to have been removed completely from public access without a prior adversarial hearing.*

*The court concludes that constitutional law requires that, before public officials take such action, they must first provide the interested parties an opportunity to present their contentions, evidence and legal arguments for consideration by a court. Such requirement is, under the law, an essential procedural safeguard.*

*The motion picture, The Tin Drum, an Academy Award winning film which has been in public circulation for twenty years without known governmental restriction anywhere else in the country, was removed by the police from public access, i.e., the public libraries, rental stores and from a private individual, without first having had any form of such adversarial hearing before a court, and without a search warrant or any adjudicated court order.*

*It is stipulated that the police followed police department custom and practice in privately obtaining an oral opinion from a state judge as a basis for their actions. However, controlling constitutional law requires more—in the form of the essential procedural safeguards discussed herein.*

*Because the defendants have not returned the film, the plaintiffs have sought a preliminary (temporary) injunction for its return,*

*pending the final disposition of this case. In view of the court's finding that the procedure for taking and retention was constitutionally insufficient as a matter of law on undisputed facts, the injunction is being granted and, in this order, the defendants are being temporarily enjoined from continuing to withhold the film from plaintiffs pending final disposition of this case.*

*This ruling is limited to the constitutionality of the procedural aspects of the removal and retention of the film. It does not address the issue of whether the film violates Oklahoma law, which will be reached when the parties present the issue by appropriate dispositive motions. That issue—whether the film, taken as a whole, constitutes the kind of criminal material intended to be prohibited by the state child pornography statute—is sharply disputed by the parties.*

## FINDINGS, CONCLUSIONS AND ORDER

Before the court are the motions of plaintiff Michael D. Camfield, plaintiffs Video Software Dealers' Association, Inc., National Association of Recording Merchandisers and Southwest Video Rentals, Inc. ("Video Dealers") and intervenor/plaintiff The State of Oklahoma, ex rel. Oklahoma Department of Libraries ("ODL") for a preliminary injunction.[1] Plaintiffs seek the court's order directing the defendants to return to plaintiffs all videotape copies of the motion picture *The Tin Drum* removed from the Oklahoma County Metropolitan Library Board (the "Library"), Blockbuster Videos, Inc. ("Blockbuster") and Southwest Videos, d/b/a Hollywood Videos ("Hollywood"). Plaintiffs contend

1. *The motion of plaintiff Camfield is pending in the separate lawsuit, Case No. CIV–97–1097–T. With the consent of the parties, the court has consolidated these two lawsuits for the purpose of ruling on the respective requests for preliminary injunctions because each request seeks the same relief, is based on the same events, and is governed by the same legal principles. Furthermore, the parties in each case have stipulated to the facts pertinent to the requested injunctive relief.*

2. *In their initial motions for a preliminary injunction, plaintiffs also sought an injunction to prevent the destruction or spoilation of the nine copies of the video tape of The Tin Drum in the possession of the defendants and an order permitting the parties to this litigation to possess, use*

that the removal and retention of the motion picture is an unconstitutional prior restraint on their First Amendment rights. Plaintiffs further seek to restrain and prohibit defendants the City of Oklahoma City, Police Chief Sam Gonzales and District Attorney Robert Macy in their official capacities and individually from any action of arrest and/or prosecution of plaintiffs or any member of plaintiffs' prospective classes for possession and/or distribution of copies of the motion picture during the pendency of this proceeding.[2]

To facilitate the adjudication of the preliminary injunction, the parties have stipulated to certain facts. The parties have also advised the court that, with respect to the requested injunctive relief based on an alleged prior restraint, no further briefing or hearing is required.

Based on the evidence and stipulations of the parties the court finds:

1. *The Tin Drum* is a 1979 motion picture of German–French production directed by Volker Schlondorff, based on the novel of the same name by Gunter Grass.

2. *The Tin Drum*, which is distributed in German with English subtitles, is an R-rated motion picture which has been widely distributed in the United States.

3. In June 1997, a citizen of Oklahoma presented to the Oklahoma City Police Department a videotape of *The Tin Drum*, alleging that the movie violated Oklahoma's child pornography laws.

4. After receipt of the allegation that the motion picture violated Oklahoma's child por-

*and distribute copies during the course of this proceeding without threat of arrest or prosecution. At the direction of the court, the parties conferred in an effort to resolve matters raised by the motions for preliminary injunction without court intervention. As a result of that effort, the defendants in both cases agreed not to destroy any copies of the video tape during the pendency of this litigation and not to prosecute or otherwise take any legal action against the parties to this lawsuit, or their attorneys, staff and representatives for the possession of The Tin Drum during the pendency of the lawsuits. Defendants further agreed not to seize or ask for the surrender of any additional copies without a written court order and warrant.*

nography laws, Officer Se Kim, a defendant in this lawsuit and a police officer for the City of Oklahoma City, following police department custom and practice, submitted a video cassette copy of *The Tin Drum* to an Oklahoma County District Judge for review. This occurred on or about June 23, 1997.

5. On or about June 24, 1997, defendant Kim and Oklahoma City Police Officer Britt High, also a defendant in this action, went to the judge's chambers and were orally advised by the judge that in his opinion *The Tin Drum* contained child pornography according to the guidelines of Oklahoma law contained in Okla. Stat. tit. 21 § § 1021.2 and 1024.1. There is no evidence as to whether the judge reviewed the film as a whole or only parts or excerpts from it.

6. The judge issued no written ruling or written order related to *The Tin Drum* and there is no evidence that any such order was requested.

7. The judge's determination was communicated orally to Officers Kim and High, and no defendant in this lawsuit was told by the judge which scene or scenes the judge determined violated Oklahoma law.

8. The judge's determination was made without a hearing, and without any similar adversarial process, and apparently without a request therefor.

9. The judge's determination was made without notice to plaintiffs in these lawsuits, to owners of copies of *The Tin Drum*, or to any other affected persons.

10. No subpoenas or search warrants were sought from, or issued by, a court authorizing seizure and retention of copies of the film.

11. Following their receipt of the judge's oral determination, Officers Kim and High and other members of the Oklahoma City Police Department conferred with the Oklahoma County District Attorney's office and, thereafter, contacted local video stores to determine the existence of copies of *The Tin Drum*. Subsequently, Officers Kim, High and/or other Oklahoma City police officers went to Blockbuster and Hollywood locations

in Oklahoma County and obtained all available copies of *The Tin Drum*. Upon learning that one copy had been rented, the officers obtained the name of that customer, who was plaintiff Michael Camfield. The officers then went to the home of Michael Camfield and obtained his rented videotape of *The Tin Drum*.

12. Nine copies of *The Tin Drum* were obtained and are in the possession of the defendants.[3]

13. No charges have been filed against anyone, and no person has been arrested, for possession or distribution of *The Tin Drum*.

14. Plaintiffs have demanded return of all copies of *The Tin Drum* obtained from Blockbuster, Hollywood, the Library and Camfield; defendants have refused to return the copies.

■ To obtain a preliminary injunction, a plaintiff must establish that: (1) there is a substantial likelihood that he will eventually prevail on the merits of his claim; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986); *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). Where injunctive relief is sought because of a claimed prior restraint on freedom of speech, the law imposes "a heavy presumption of unconstitutionality that must be overcome." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 557–58, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The burden of justifying suppression of the material at issue rests upon the government actors. *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 70, n. 20, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983).

■ Expressive materials, including motion pictures, are presumptively entitled to

---

**3.** *A total of seven copies were obtained from Blockbuster, Hollywood and plaintiff Camfield. Two copies presented to the police officers by the complaining citizen were apparently obtained by*

*him from the Library. By agreement of the parties, one of the nine videotapes has been submitted to this court for evidentiary use in these lawsuits.*

First Amendment protection. *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989). Although obscene or pornographic material is not protected by the First Amendment, "rigorous procedural safeguards" must be employed before expressive materials can be seized as obscene. *Fort Wayne*, 489 U.S. at 46, 62–63, 109 S.Ct. 916, *citing Quantity of Copies of Books v. Kansas*, 378 U.S. 205, 210, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); *Marcus v. Search Warrants of Property at 104 East Tenth St.*, 367 U.S. 717, 732, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). While a single copy of a book or film may be seized and retained for evidentiary purposes based upon findings of probable cause, "The publication may not be taken out of circulation completely until there has been a determination of obscenity after an adversary hearing." *Fort Wayne*, 489 U.S. 46, 63, 109 S.Ct. 916. Absent such determination in an adversary proceeding, "exhibition of a film cannot be restrained by seizing all available copies." *Heller v. New York*, 413 U.S. 483, 492–93, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

 Any system of prior restraint comes to the court bearing a "heavy presumption against its constitutional validity." *Southeastern Promotions*, 420 U.S. at 558, 95 S.Ct. 1239, *citing Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). A system of prior restraint "avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the danger of a censorship system." *Southeastern Promotions*, 420 U.S. at 559, 95 S.Ct. 1239, *citing Freedman v. Maryland*, 380 U.S. 51, 58, 85 S.Ct. 734, 13 L.Ed.2d 649

(1965). Prior restraint "runs afoul of the First Amendment" if it lacks certain safeguards. *Freedman*, 380 U.S. at 58, 85 S.Ct. 734. These include (1) the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor; (2) any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo; and (3) a prompt final judicial determination must be assured. *Id.*

 In this case, it is undisputed that there was no adversarial proceeding or any other official court proceeding prior to the verbal statement of the state judge to the officers or to the subsequent action of the police to obtain copies of the available videotapes of *The Tin Drum*. Moreover, the record reflects that while it was not the intent of the City to pursue criminal sanctions at that time, it was the intent of the defendants to "remove the film from public access." *See* July 3, 1997 press release of Oklahoma City Police Chief Sam Gonzales, Exhibit A to plaintiff Camfield's motion for preliminary injunction.

 The admitted goal to remove the film from public access without a prior adversarial judicial proceeding runs afoul of the First Amendment.[4] Although defendant Macy subsequently filed a lawsuit, now pending before this court, in which he seeks a declaratory judgment of whether *The Tin Drum* constitutes child pornography under the Oklahoma statutes,[5] that lawsuit was not filed until after all available videotapes had been taken and retained by the police offi-

---

4. *The defendant police officers imply in their argument that the determination of the prior restraint issue must turn on the voluntariness of the seizure of the tapes in this instance, and they contend that the employees of the Video Dealers and Mr. Camfield all voluntarily relinquished the tapes in their possession. The applicable law, in the context of the facts of this case, establishes that prior restraint is not limited to a Fourth Amendment search and seizure issue; rather, such restraints may take a "variety of forms." See, e.g. Southeastern Promotions, 420 U.S. 546, 552–53, 95 S.Ct. 1239, 43 L.Ed.2d 448. The issue in this case is whether the motion picture could be removed from public access without an adversarial hearing on the issue of pornography. It is also not disputed that, regardless of the volun-*

tariness of the initial relinquishment of the tapes, the defendants refused to return them upon the request of the plaintiffs. Thus, it is not only the manner in which the tapes were originally obtained, but the continued refusal to return them, that is alleged to constitute a prior restraint in this instance. Whether there was a seizure in violation of the Fourth Amendment is a separate issue to be resolved at another stage of the proceedings.

5. *That lawsuit is styled The State of Oklahoma, ex rel. Robert H. Macy v. A Motion Picture Entitled "The Tin Drum," et al., CIV–97–1281–T. It was initially filed in state court and was removed to this court.*

cers and until after lawsuits were filed by plaintiffs Camfield and Video Dealers. Thus, although potentially sufficient for future purposes, its filing does not cure the deficiencies at issue here. Plaintiffs have shown a substantial likelihood of prevailing on the prior restraint issue.

■ Where First Amendment rights are asserted, irreparable harm is presumed. *Community Communications, Inc. v. City of Boulder, Colorado,* 660 F.2d 1370, 1371 (10th Cir.1981) *citing Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). As a result, plaintiffs satisfy this requisite element of injunctive relief.

With respect to the balance of the plaintiffs' interest against the interests of the nonmoving parties, the court readily acknowledges that the defendants have an obligation and responsibility to enforce the Oklahoma law. However, that responsibility must be pursued in compliance with the safeguards required by the authorities cited above.

The court must also balance the interest of plaintiffs and members of the prospective classes against the public interest. *The Tin Drum* has been in distribution for almost twenty years, received the Academy Award for best foreign language film, has been widely shown on television and has been available for rental for a number of years. Prior to the challenged actions here, it was available in Oklahoma County in video rental stores and through the library and, indeed, in other counties of Oklahoma and throughout the country. There is no evidence before the court that it has ever before been withdrawn from public access or subjected to police or judicial censorship anywhere else in the country. The film includes certain scenes which are clearly inappropriate for viewing by persons sought to be protected by its "R" rating. The requirements and restrictions of the "R" rating are unquestionably warranted for this film. However, there has been no showing that such restrictions and requirements are less adequate today than during the twenty years in which the film has been in unrestricted public access. In fact, there is evidence that prosecution for the film as child pornography has been expressly declined by the Tulsa County District Attorney. In addition, the Chief of Police of Oklahoma City has publicly stated that, after consulting with the District Attorney's office, the decision was made not to pursue criminal sanctions but rather, as noted above, to remove the film from public access.

Plaintiffs have satisfied their burden of establishing a basis for a preliminary injunction on the grounds that the procedures utilized in removing copies of the film *The Tin Drum* from public access constitute an invalid prior restraint according to the law as applied by the Supreme Court and this circuit. In making that determination, the court does not address the issue of whether the movie violates the Oklahoma child pornography statute. Rather, this ruling is strictly limited to the procedural infirmities in connection with the manner in which the movie was removed from public access. To determine whether an unlawful prior restraint occurred, the court need not decide whether the standard of obscenity or pornography applied was sufficiently precise or substantively correct or whether the movie is in fact obscene or pornographic. *Southeastern Promotions,* 420 U.S. 546, 562, 95 S.Ct. 1239, 43 L.Ed.2d 448. Those issues, once procedurally before the court for decision, will be determined at another stage of these proceedings. In the meantime, the plaintiff's request for temporary injunctive relief is GRANTED.

Defendants are temporarily enjoined from continuing to withhold the film from the respective plaintiffs pending the final disposition of these cases or further order of the court.

Given the ruling here, and there being no suggestion or any reason to believe that District Attorney Macy would initiate criminal prosecutions without constitutionally valid procedural requirements first being met, the plaintiffs' request for an injunction against him need not be addressed.