PAUL KELLY, Circuit Judge.
Plaintiff Tom Snyder appeals from the district court’s grant of summary judgment in favor of Defendants Murray City and H. Craig Hall, the City Attorney of Murray City. In his 42 U.S.C. § 1983 action, Mr. *1351 Snyder alleged that Murray City’s refusal to permit him to speak during the reverence portion of a Murray City Council meeting violated his rights under the United States Constitution. He also alleged violations of the Religious Freedom Restoration Act and the Utah Constitution. The talk Mr. Snyder desired to present — which he characterizes as a prayer and the City characterizes as a diatribe against City officials[1] — requests the “Mother in Heaven” to cause the cessation of prayers at public meetings. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm in part and reverse in part.

Background

Since 1982, Murray City has opened its city council meetings with a reverence period, during which an invocation or devotional is presented. The reverence portion of the meetings is designed to encourage lofty thoughts, promote civility, and cause the participants to set aside other matters in order to focus on the topics to be addressed at the meeting. The city council extends invitations to speak during the reverence period to individuals representing a broad cross-section of religious faiths, and invocations or devotionals have been presented at the Murray City Council meetings 'by Christians, Navajos, Quakers, and Zen Buddhists. One speaker simply requested a moment of silence. Mr. Snyder, who does not reside in Murray City, wrote to the City, advising of his interest in presenting a prayer at a council meeting. Mr. Snyder attached his two-page proposed “Opening Prayer” to the letter.[2] Mr. Snyder’s request was part of his personal campaign to stop prayers at public meetings, waged in response to a recent decision of the Supreme Court of Utah which upheld Salt Lake City’s practice of opening public meetings with a prayer.
Although Mr. Snyder was reared as a member of the Church of Jesus Christ of Latter-Day Saints, he is no longer a practicing member of that faith, or any other organized religion. He testified that he considers himself deeply religious, but is not yet sure what his beliefs are, and leans towards agnosticism. Mr. Snyder cites the Book of
*1352 Mormon and the Gospel of St. Matthew as the religious bases for his prayer. He believes that prayer should be a private matter between an individual and his or her God, and that Jesus Christ opposed public prayers, including those before government meetings. Although Mr. Snyder testified at his deposition that he believes in God, he also testified that he questions God’s existence.
On behalf of Murray City, Mr. Hall responded to Mr. Snyder’s request and informed him that his proposed prayer was unacceptable because it did not follow the guidelines for prayers which the City had previously provided to Mr. Snyder. Although the council had no formal, written policy, Mr. Snyder had been informed by letter prior to the submission of his proposed prayer that “the purpose of the ‘prayer’ is to allow individuals [the] opportunity to express thoughts, leave blessings, etc. It is not a time to express political views, attack city policies or practices or mock city practices or policies.” Mr. Snyder had also been advised that comments on City practices and policies could be made during city council meetings either by requesting a place on the meeting agenda or by speaking during the citizen comment portion of the meeting. The citizen comment portion of the meeting immediately follows the reverence portion.
Mr. Snyder filed this § 1983 action upon receiving in the mail Murray City’s denial of his request to give a prayer. He alleges that the City’s refusal of his request violated his rights under the United States and Utah Constitutions to free exercise of his religion and to due process. Mr. Snyder also alleges violations of the Establishment Clause of both Constitutions, and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb-2000bb-4. Both Defendants and Mr. Snyder moved for summary judgment, which the district court granted in favor of the Defendants and denied to Mr. Snyder, who brings this appeal.

Discussion

Our review of questions of constitutional law and dispositions on summary judgment is de novo. United States v. One Parcel Property, 106 F.3d 336, 338 (10th Cir. 1997).
I. Claims Under the United States Constitution
Mr. Snyder brings this action under 42 U.S.C. § 1983. To prevail in a § 1983 claim, a plaintiff must establish that the defendants, while acting under color of state law, deprived him of a right, privilege, or immunity secured by the United States Constitution. We therefore consider whether Murray City’s denial of Mr. Snyder’s request to deliver his proposed prayer during the reverence portion of a city council meeting violated his rights under the Free Exercise, Establishment, or Due Process Clauses of the Federal Constitution.
In his briefs, Mr. Snyder relies upon case law interpreting the Free Speech Clause of the First Amendment. Since he did not allege a violation of his right to free speech, however, we need not consider the arguments raised under that body of law.
A. Free Exercise Claim
The first questions in any free exercise claim are whether the plaintiffs beliefs are religious in nature, and whether those religious beliefs are sincerely held. United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 863-64, 13 L.Ed.2d 733 (1965). Only beliefs which are religious in nature are protected by the Free Exercise Clause. Nevertheless, “religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.” Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S. 707, 714, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981).
Although Mr. Snyder swore out affidavits attesting to his sincerity, the district court held that he was not sincere in the beliefs espoused in his proposed prayer. The district court reached this conclusion based upon the text of Mr. Snyder’s prayer, which the court found to contain political instead of religious content, and on Mr. Snyder’s deposition testimony that he was unsure of his religious beliefs. The inquiry into the sincerity of a free-exereise plaintiffs religious beliefs is almost exclusively a credibility assessment, see Seeger, 380 U.S. at 186, 85
*1353 S.Ct. at 864; Mosier v. Maynard, 937 F.2d 1521, 1526 (10th Cir.1991), and therefore the issue of sincerity can rarely be determined on summary judgment. This may well be, however, one of those very rare cases in which the plaintiffs beliefs are “so bizarre, so clearly nonreligious in motivation” that they are not entitled to First Amendment protection. Thomas, 450 U.S. at 715, 101 S.Ct. at 1431.
Regardless, we need not decide whether Mr. Snyder’s beliefs are religious in nature nor whether they are sincerely held. Nor need we address Mr. Snyder’s argument that summary judgment was inappropriate. Even assuming that Mr. Snyder is possessed of sincerely held religious beliefs, as articulated in his proposed prayer, we find that Mr. Snyder’s claim is not cognizable under the Free Exercise Clause. In fact, Mr. Snyder’s arguments evince a fundamental misconception about the rights bestowed by the Clause.
The Free Exercise Clause is one of the Bill of Rights’s “thou shall not” prohibitions against certain government actions. The Clause “is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.” Sherbert v. Vemer, 374 U.S. 398, 412, 83 S.Ct. 1790, 1798, 10 L.Ed.2d 965 (1963) (Douglas, J., concurring). To protect “the right to believe and profess whatever religious doctrine one desires,” Employment Div. v. Smith, 494 U.S. 872, 877, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876 (1990), the Free Exercise Clause prohibits the government from impermissibly burdening an individual’s free exercise of religion. However, “[t]he Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens.” Bowen v. Roy, 476 U.S. 693, 699, 106 S.Ct. 2147, 2152, 90 L.Ed.2d 735 (1986).
The Free Exercise Clause does not guarantee any person the right to pray whenever and wherever he chooses. Nor does the Clause guarantee a person the right to speak during portions of public meetings set aside for devotional or invoeational purposes. Suggestion to the contrary is inconsistent with both common sense and constitutional doctrine. Cf. Heffron v. International Soc’y for Krishna Consciousness, 452 U.S. 640, 647,101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981) (“[T]he First Amendment does not guarantee the right to communicate one’s views at all times and places or in any manner that may be desired.”). We find no violation of the Free Exercise Clause.
B. Establishment Clause Claim
Mr. Snyder claims that Murray City’s denial of his request to speak at the reverence portion of its city council meeting violated the Establishment Clause. This argument also misapprehends the protections afforded by that Clause. The Establishment Clause assures that the government will not favor a particular religion, nor religion over nonreligion. Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet, 512 U.S. 687, 703, 114 S.Ct. 2481, 2491, 129 L.Ed.2d 546 (1994). Like the Free Exercise Clause, the Establishment Clause is a prohibition against certain government actions. The Establishment Clause does not give any individual the right to establish his religion by guaranteeing an opportunity to pray during public meetings, and certainly does not require Murray City to permit all comers to speak during the reverence portion of its city council meetings.
In Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the Supreme Court upheld the constitutionality of opening governmental meetings with prayers. The Court observed that the “opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country.” Id. at 786, 103 S.Ct. at 3333. “To invoke Divine guidance on a public body entrusted with making the laws is not ... an ‘establishment’ of religion or a step toward establishment____” Id. at 792, 103 S.Ct. at 3336.
Mr. Snyder does not argue that Murray City’s practice of opening its city council meetings with prayer violates the Establishment Clause. Marsh appears to foreclose such an argument. Instead, Mr. Snyder argues- that Murray City violated the *1354 Establishment Clause by permitting others to pray, yet denying him the same opportunity. Marsh suggests that a governmental body’s practices in selecting persons to deliver prayers at public meetings may violate the Establishment Clause if the selections are the product of impermissible motives. Id. at 793, 103 S.Ct. at 3337. The record in this matter is devoid of evidence suggesting that Murray City had impermissible motives either in extending invitations to speak, or in denying Mr. Snyder’s request.[3] Similarly absent is any suggestion that Murray City used the reverence portion of its city council meetings to advance a particular faith or to disparage any faith or belief. See id. at 794-95, 103 S.Ct. at 3337-38. In contrast, Mr. Snyder’s prayer itself disparages those who believe in the propriety of public prayer. Clearly, the content of Mr. Snyder’s prayer is in conflict with the City’s legitimate objectives in presenting such prayers. Marsh controls the issue before us, and we find no violation of the Establishment Clause.
C. Due Process Claim
Because Mr. Snyder’s First Amendment claims are without merit, his claim under the Federal Due Process Clause also fails. It is beyond argument that process is due only when the government terminates a protected interest. Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Mr. Snyder was not deprived of any protected interest and therefore he had no entitlement to any sort of process.
II. Religious Freedom Restoration Act Claim
Mr. Snyder appeals from the district court’s adverse decision on his RFRA claims. Since this case was argued, however, the Supreme Court has held RFRA unconstitutional. City of Boerne v. Flores, — U.S. -, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). We therefore need not consider the merits of Mr. Snyder’s RFRA claims.
III. Claims Under the Utah Constitution
Mr. Snyder also alleges that the City’s denial of his request violates the Free Exercise, Establishment, and Due Process Clauses of the Utah Constitution. Although the district court did not reach the merits of these state-law claims, it ruled against Mr. Snyder, finding that the provisions of the Utah Constitution were not “self-executing” and therefore did not provide a cause of action.
We have held that when federal claims are resolved prior to trial, the district court should usually decline to exercise jurisdiction over pendent state law claims and allow the plaintiff to pursue them in state court. See Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995). We believe this general practice is particularly appropriate in this case.
The Supreme Court of Utah recently rejected a challenge to Salt Lake City’s practice of opening its city council meetings with a prayer. Society of Separationists v. Whitehead, 870 P.2d 916 (Utah 1993). While that challenge was brought under the provision of Utah’s Constitution which prohibited the expenditure of public monies for religious purposes and not under its Free Exercise or Establishment Clauses, the Supreme Court of Utah stated in Society of Separationists that it would not follow federal constitutional models in interpreting the Religion Clauses of the Utah Constitution. Id. at 930, 931 n. 36. Given that the interpretation of those Clauses appears to be undergoing an evolution, and given the complex issues of state *1355 law presented, we decline to exercise supplemental jurisdiction over Mr. Snyder’s state-law claims.
We therefore reverse as to the state-law claims and remand them to the district court with instructions to dismiss without prejudice.
AFFIRMED in part, REVERSED in part, and REMANDED to the district court.

. We recognize that the parties disagree over whether Mr. Snyder’s proposed speech was a prayer and whether Murray City denied his request. The City’s letter to Mr. Snyder informed him that, until his "proposed prayer satisfies [the City's] guidelines, an invitation to participate in our opening ceremonies will not be forthcoming." The City also advised Mr. Snyder that he could request a place on the meeting agenda or voice his thoughts during the citizen comment portion of the meeting. For ease of reference, however, we adopt the terminology used by the parties and refer to Mr. Snyder's talk as a prayer and the City’s action as a denial of his request to deliver his prayer.

. Mr. Snyder’s proposed prayer read as follows:
OUR MOTHER, who art in heaven (if, indeed there is a heaven and if there is a God that takes a woman’s form) hallowed be thy name, we ask for thy blessing for and guidance of those that will participate in this meeting and for those mortals that govern the state of Utah;
We fervently ask that you guide the leaders of this city, Salt Lake County and the State of Utah so that they may see the wisdom of separating church and state and so that they will never again perform demeaning religious ceremonies as part of official government functions;
We pray that you prevent self-righteous politicians from mis-using the name of God in conducting government meetings; and, that you lead them away from the hypocritical and blasphemous deception of the public, attempting to make the people believe that bureaucrats' decisions and actions have thy stamp of approval if prayers are offered at the beginning of government meetings;
We ask that you grant Utah's leaders and politicians enough courage and discernment to understand that religion is a private matter between every individual and his or her deity; we beseech thee to educate government leaders that religious beliefs should not be broadcast and revealed for the purpose of impressing others; we pray that you strike down those that mis-use your name and those that cheapen the institution of prayer by using it for their own selfish political gains;
We ask that the people of the State of Utah will some day learn the wisdom of the separation of church and state; we ask that you will teach the people of Utah that government should not participate in religion; we pray that you smite those government officials that would attempt to censor or control prayers made by anyone to you or to any other of our Gods;
We ask that you deliver us from the evil of forced religious worship now sought to be imposed upon the people of the State of Utah by the actions of mis-guided, weak and stupid politicians, who abuse power in their own self-righteousness;
All of this we ask in thy name and in the name of thy son (if in fact you had a son that visited earth) for the eternal betterment of all of us who populate the Great State of Utah.
Amen.

. Conceding that no actual evidence of improper motive exists, the dissent attempts to create a material issue of fact sufficient to justify a trial by citing a collection of supposed inferences. Dissent at 1358. A mere demonstration that the City denied Mr. Snyder’s request because of the content of his prayer does not prove a violation of the Establishment Clause. To survive the motion for summary judgment, Mr. Snyder was required to produce evidence from which reasonable jurors could find by a preponderance of the evidence that the City had an impermissible motive, Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); in other words, that the City denied Mr. Snyder's request because it preferred another religion, or nonreligion, over his religion. Genuine issues of material facts may be founded upon inferences; however, those inferences must be reasonable inferences, and must amount to more than a scintilla of evidence. Id.; see also Black v. Baker Oil Tools, 107 F.3d 1457, 1460 (10th Cir.1997). Even assuming that a collection of inferences can create a genuine issue of material fact, this record cannot reasonably be considered to have created such an issue.