Charles E. **BEERHEIDE**, Sheldon Perlman, and Allen Isaac Fistell, Plaintiffs,

v.

Aristedes W. **ZAVARAS**, Executive Director, Colorado Department of Corrections, Gerald M. Gasko, Acting Deputy Director, Colorado Department of Corrections, Dona Zavislan, Food Service Administration, Colorado Department of Corrections, William T. Potter, Volunteer Service Coordinator, Colorado Department of Corrections, and Does 1 Through 10, Defendants.

Civ. Nos. 95–B–2325, 95–B–2326 and 95–B–2481.

United States District Court, D. Colorado.

March 16, 1998.

Scot M. Peterson, Waldbaum, Corn, Koff, etc., Denver, CO, Scott D. Helker, Helker Law Office, Arvada, CO, Dwight L. Pringle, Collins & Pringle, Denver, CO, for plaintiffs.

Thomas S. Parchman, Paul Sanzo, Assistant Attorneys General, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In these consolidated cases, plaintiffs, Charles E. Beerheide (Beerheide), Sheldon Perlman (Perlman), and Allen Isaac Fistell (Fistell) (collectively, plaintiffs), inmates in the custody of the Colorado Department of Corrections (DOC), filed law suits pursuant to 42 U.S.C. § 1983 and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq., seeking an injunction requiring the DOC to provide them with kosher meals in accordance with Orthodox Jewish law. Also pending is plaintiffs' motion to amend complaint. I will grant the motion for a preliminary injunction. I will also grant plaintiffs' motion to amend their complaint.

## I.

### Procedural Background

Defendant DOC filed motions for summary judgment which I referred to the magistrate judge for recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge held an evidentiary hearing at the Fremont Correctional Facility in Cañon City, Colorado on plaintiffs' RFRA claim. Thereafter, the parties submitted written closing arguments. The magistrate judge issued a recommendation to grant a preliminary injunction "in favor of Plaintiffs and against Defendant on the issue of a Kosher diet; and ... deny[ing] [it] in all other respects." MJ Recomm. p. 16. Defendant filed objections to the magistrate judge's recommendation. Thereafter, I held a hearing on the objections and took the matter under advisement pending the United States Supreme Court's decision on the constitutionality of the RFRA. See Flores v. City of Boerne, 73 F.3d 1352 (5th Cir.), cert. granted, 519 U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 212 (1996). In City of Boerne v.

Flores, 521 U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Court declared the RFRA unconstitutional.

Pursuant to 28 U.S.C. § 636(b)(1), I have conducted a de novo review of the facts, the law, and the legal analysis in the magistrate's recommendation, and defendants' objections to the magistrate's recommendation. Koetting v. Thompson, 995 F.2d 37 (5th Cir.1993). However, the magistrate judge's recommendation was based on application of the RFRA. In light of Boerne, therefore, I review this case under pre-RFRA standards including case law properly not considered by the magistrate judge in making his recommendation.

## II.

### Facts

Evidence received at the hearing conducted by the magistrate judge establishes the following facts. There are approximately 10,000 inmates housed in 21 adult correctional facilities in the State of Colorado Department of Corrections. Plaintiff Beerheide, incarcerated at Limon Correctional Facility, converted to Judaism and is an Orthodox Jew. Plaintiff Sheldon Perlman (Perlman), an inmate at the San Carlos Facility, was born and raised in an Orthodox Jewish family. Plaintiff Fistell, housed at the FCF, was also born into an Orthodox Jewish family. All three men testified that they wished to observe the practices of Orthodox Judaism including eating only kosher food. The parties agree that plaintiffs are sincere in their religious beliefs.

Rabbi Gershon Winkler, certified by the Court as an expert witness on Jewish law, testified that "keeping kosher" is a central tenet of Orthodox Judaism. "Kosher" includes specific rules concerning which foods may be eaten and which are forbidden. Foods that may be eaten include all non-animal products such as fruits and vegetables, meat from animals without cloven hooves including cows and sheep, and fish which have fins and scales. "Kosher" also dictates specific methods by which allowable foods are prepared for consumption. For

example, kosher food is no longer "kosher" if it is prepared in containers which have held non-kosher food. To keep kosher foods untainted, containers, pots and pans, utensils, and all other implements used in their preparation must not come into contact with any item that is or has had contact with nonkosher food. Also, to keep kosher food "kosher," it must be served on plates and bowls and eaten with utensils which have not had non-kosher contact.

Dona Zavislan, Food Services Administrator for DOC, testified that "DOC provides no special religious meals." Trans. p. 138. However, at the hearing on objections to the magistrate judge's recommendation, DOC administrative regulation number 1550–6 (AR 1550–6), effective April 15, 1997, was introduced into evidence. AR 1550–6 states, in pertinent part:

> It is the policy of the Department of Corrections (DOC) to provide for special diets for offenders whose religious beliefs require the adherence to religious dietary laws ... within available resources through standard menu alternatives, Canteen selections and volunteer services.

DOC AR–1550–6(I). Also, Zavislan testified that about three years ago, DOC Food Services began offering a vegetarian alternate entree program consisting of a "variety of bean, peanut butter and cheeses." *Id.* at 138. Zavislan stated DOC purchases a large number of kosher food items including margarine, grits, salad dressings, tuna fish, flavorings, canned goods, gelatin, beverage bases, puddings, and pastas. Also, DOC does not use lard or fat derived from animal products. However, the kosher products are prepared in a non-kosher kitchen. Thus, the kosher products are no longer considered kosher. *Id.* at 141–42. Zavislan testified that to equip a DOC facility with a "kosher" food preparation area would cost approximately $8,200 exclusive of cold food storage costs. *Id.* at 136. She testified that the plaintiffs could be provided with a kosher diet by serving them commercially available kosher TV dinners and plastic and paper utensils.

## III.

### Motion to amend complaint

In light of the impact of *City of Boerne*, plaintiffs filed a motion for leave to amend complaint to add two claims: 1) a § 1983 action for violation of the Free Exercise Clause of the First Amendment of the United States Constitution; and 2) a claim for "a liberty interest under the due process clause in the Sixth and Fourteenth Amendments of the United States Constitution," Proposed First Amended Complaint, ¶ 24. I will construe claim two as a § 1983 action for violation of the right to due process of law under the *Fifth* and Fourteenth Amendments. Defendants object only to the addition of the § 1983 action based on an alleged due process violation.

Leave to amend pleadings "shall be freely given when justice so requires," Fed. R.Civ.P. 15(a), and if there is no undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993). Plaintiffs moved to amend their complaint when their RFRA claim became void after the Supreme Court decision in *City of Boerne*. There being no demonstrated reason to deny the motion, I will grant plaintiffs' motion to amend their complaint. Because plaintiffs are entitled to preliminary injunctive relief based on their First Amendment Free Exercise claim, I need not address their Due Process claim.

## IV.

### Preliminary Injunction

#### A. *Injunction Law*

The purpose of a preliminary injunction under Fed.R.Civ.P. 65 is to preserve the status quo between the parties pending a final determination on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). Preliminary injunction is an extraordinary remedy—an exception rather than the rule.

GTE Corp. v. Williams, 731 F.2d 676, 678 (10th Cir.1984). Thus, the right to relief must be clear and unequivocal. See Penn v. San Juan Hosp., 528 F.2d 1181, 1185 (10th Cir.1975). See generally 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948m at 428–29 nn. 19–21 (1973 & 1991 Supp.).

A preliminary injunction is an equitable remedy that invokes the sound discretion of the district court. Lundgrin, 619 F.2d at 63. The burden is on the movant to make a prima facie showing of a probable right to the ultimate relief and a probable danger of injury if the motion is denied. Id. A preliminary injunction may issue if the movant clearly shows: (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm the preliminary injunction will cause the opposing party; and (4) the preliminary injunction is not adverse to the public interest. SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir.1991); Lundgrin, 619 F.2d at 63.

In the Tenth Circuit, the following types of preliminary injunctions are disfavored and require the movant to satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in the movant's favor before such an injunction may be issued: "(1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits...." Visa, 936 F.2d at 1098. To prevail on a motion for preliminary injunction where the requested injunction falls into one or more of these categories, the movant must show that on balance, the four factors weigh heavily and compellingly in his favor. Id. at 1098–99. Here, the injunction sought would disturb the status quo, is mandatory rather than prohibitory, and would afford plaintiffs substantially all the relief to which they would be entitled if they prevail at a full trial on the merits. Thus, plaintiffs must show that the four Visa factors weigh heavily and compel-

lingly in their favor. However, where the movant prevails on the second, third and fourth factors, the first factor, substantial likelihood of prevailing on the merits of the claim, is relaxed to require only that the movant raise "questions so serious, substantial, difficult, and doubtful as to make them fair ground for litigation and thus for more deliberate inquiry." Longstreth v. Maynard, 961 F.2d 895, 903 (10th Cir.1992), cert. denied, 510 U.S. 895, 114 S.Ct. 260, 126 L.Ed.2d 212 (1993) quoting Lundgrin, 619 F.2d at 63.

At the outset, I will evaluate Visa factors two through four so I will know which standard is applicable to factor one.

Factor 2. Irreparable injury

The irreparable injury in this case is the deprivation of plaintiffs' First Amendment rights. "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948 (1973). See also Longstreth, 961 F.2d at 895. Further, plaintiffs cannot be made whole through the imposition of money damages. Howard v. United States, 864 F.Supp. 1019, 1029 (D.Colo.1994) (injunction proper where money damages are inadequate recompense). Thus, plaintiffs have made a showing of irreparable injury if the injunction is not granted.

Factor 3. Threatened injury outweighs harm to the opposing party;

Plaintiffs' First Amendment rights allegedly are being violated by the enforcement of the current prison practice to not provide them with kosher meals. The DOC argues that providing a kosher diet to plaintiffs will adversely affect its dietary budget, impact security, and result in a proliferation of other suits.

However, as analyzed below, providing plaintiffs with kosher meals will have a de minimis impact on the DOC's dietary budget. There is no support in the record for DOC's fear that security will be adversely impacted if plaintiffs are provided kosher

diets. Moreover, the fear that granting plaintiffs the relief they seek will result in a plethora of lawsuits is speculative at best. Thus, in balance, the violation of plaintiffs' First Amendment rights outweighs the resulting harm to defendants.

Factor 4. *Preliminary injunction is not adverse to the public interest;*

In the view of many members of the public, any increase in the cost of running a prison is contrary to the public interest. However, enforcement of the First Amendment of the United States Constitution promotes every citizen's fundamental right to religious freedom. On balance, I find that affording plaintiffs such fundamental First Amendment rights is in the public interest and is not outweighed by any other consideration in this case.

Factor 1. *Substantial likelihood of success on the merits*

Having prevailed on the other preliminary injunction factors, plaintiffs are required only to raise "questions so serious, substantial, difficult, and doubtful as to make them fair ground for litigation and thus for more deliberate inquiry." *Longstreth v. Maynard,* 961 F.2d 895, 903, *cert. denied,* 510 U.S. 895, 114 S.Ct. 260, 126 L.Ed.2d 212 (1993) quoting *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). The possibility that defendants are impinging plaintiffs' First Amendment right to free exercise of their sincerely held religious beliefs by refusing to provide them with a kosher diet raises serious, substantial and difficult questions which merit more deliberate inquiry.

## V.

### First Amendment Free Exercise Claim

The initial inquiry in a free exercise claim is whether the plaintiffs' beliefs are religious in nature, and whether those religious beliefs are sincerely held. *United States v. Seeger,* 380 U.S. 163, 183–84, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Snyder v. Murray City Corp.,* 124 F.3d 1349, 1352 (10th Cir.1997). Only beliefs which are religious in nature are protected by the Free Exercise clause. *Snyder, id.* Nevertheless, "religious beliefs need not be acceptable, logical, consistent or comprehensible to other in order to merit First Amendment protection." *Id.* citing *Thomas v. Review Bd. of the Indiana Employment Sec. Div.,* 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Here, it is undisputed that plaintiffs are sincere in their religious beliefs.

In the Tenth Circuit, prisoners have a constitutional right to a diet conforming to sincerely held religious beliefs, unless denying the diet is "reasonably related to legitimate penological interests." *LaFevers v. Saffle,* 936 F.2d 1117, 1119 (10th Cir.1991). To determine the likelihood of plaintiffs prevailing on the merits of their First Amendment claim, I apply the pre-RFRA standards set forth in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

In *Turner,* the Supreme Court identified four factors I gauge to determine the reasonableness of a restraint on a prisoner's exercise of constitutional rights:

1. whether the regulation or action has a logical connection to the legitimate government interests invoked to justify it;

2. whether there are alternative means of exercising the rights that remain open to the inmates;

3. the impact the accommodation of the asserted constitutional rights will have on other inmates, guards and prison resources; and

4. the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* costs to valid penological interests.

*Turner,* 482 U.S. at 89–90. The existence of "obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.* at 90.

### A. *Application of Turner factors*

1. *Valid connection between prison action and governmental interests*

The right to free exercise of religious beliefs may "be restricted in order to achieve legitimate correctional goals," *Bell v. Wolfish* 441 U.S. 520, 546–47, 99 S.Ct. 1861,

60 L.Ed.2d 447 (1979), including institutional security and operating a simplified food service. *Ashelman v. Wawrzaszek,* 111 F.3d 674, 677 (9th Cir.1997).

■ The DOC proffers three governmental concerns related to legitimate correctional goals to justify its policy of not providing "religious" diets: 1) cost considerations; 2) security concerns; and 3) the proliferation of other lawsuits. Each concern is legitimate in the abstract. As discussed in section V(A)(3), *infra,* however, the nexus between the prison dietary policy and the correctional goals is too tenuous to withstand scrutiny. Furthermore, it is significant that DOC's own administrative regulation number 1550–6 undercuts the legitimacy of its stated concerns in the concrete context of this case.

### 2. *Alternative Means to Exercise the Right*

The head of DOC Food Services testified that each DOC facility could be equipped with a "kosher preparation" area at the cost of approximately $8,200 per facility, excluding cold storage costs. There was evidence presented that kosher TV dinners are available which could be heated and served to plaintiffs. However, there was no evidence of the cost of these meals. Thus, this alternative may be feasible but is not currently available to the plaintiffs. Kosher meals are available for purchase in the prison canteens. However, the evidence established that most inmates would be unable financially to purchase kosher meals due to their very limited income. Thus, this alternative is not feasible. Also, during special Jewish holidays such as Passover, kosher food is brought in from the community for the Jewish inmates. However, daily provision of kosher food by the community is not feasible. Under these circumstances, I find that plaintiffs do not have a viable alternative to eating kosher.

### 3. *effect of accommodating plaintiffs' request*

#### a. *cost considerations*

The record reflects that the DOC Food Services department has an annual budget of about $8.25 million to feed approximately 10,000 inmates. Trans. pp. 126, 145. Zavislan testified it would cost approximately $1.4 million dollars per year to provide kosher entrees or kosher TV dinners to the Orthodox Jewish inmates and the Muslims. *Id.* at 144–45. However, there was no testimony by Zavislan or any other witness as to the basis for the $1.4 million dollar figure. Nor was there any testimony establishing the annual cost to provide kosher TV dinners to the three plaintiffs.

The cited $1.4 million cost to feed the entire DOC Jewish and Muslim populations is not pertinent in this case brought by three inmate plaintiffs. However, mathematically speaking, the actual annual cost of providing these three inmates with kosher meals, by force of reason, must be regarded as a minuscule portion of the Food Services' annual budget. Thus, defendants' concerns about the effect of the preliminary injunction on their costs is without merit.

#### b. *security concerns*

There was no evidence presented to support the DOC's position that providing plaintiffs kosher meals would present security problems. Thus, security concerns cannot justify the DOC's policy.

#### c. *proliferation of other lawsuits*

The concern of proliferation of lawsuits seeking various accommodations is speculative at best. Moreover, to deny these plaintiffs their right to observe a central tenet of their religion on the ground that it might lead to other lawsuits is specious. The DOC's logic would effectively preclude provision of any accommodations for religious practices in prison. Prisoners retain the right to the protections of the First Amendment, including the free exercise of religion. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 346, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). To deny plaintiffs their right to free exercise of their sincerely held religious beliefs because it might lead to other inmates filing lawsuits is unreasonable. My task is to resolve the narrow and discrete issues involving the three inmate plaintiffs in the context of this case only.

4. *availability of alternative means to accommodate rights at minimal cost*

The Supreme Court characterizes this factor as a way to check that the prison policy is not an exaggerated response to a legitimate prison concern. *Turner,* 482 U.S. at 90.

> This is not a "least restrictive alternative" test. Prison officials do not have to up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Id.* at 90–91.

The impact on DOC Food Service's budget is a valid concern. However, as discussed previously, the defendants have not explained why providing plaintiffs with kosher TV dinners would not accommodate plaintiffs' request at a *de minimis* cost.

I conclude that under the *Turner* factors, plaintiffs have demonstrated a substantial likelihood of success on the merits of claim one. Having concluded that plaintiffs prevail on each factor of the *Visa* test, I will grant their motion for a preliminary injunction. However, the details and method of providing plaintiffs with a kosher diet should be left to DOC officials.

Accordingly, it is ORDERED that:

1. the plaintiffs' motion for preliminary injunction is GRANTED;

2. the defendants SHALL PROVIDE plaintiffs with a diet which complies with the kosher requirements of Orthodox Judaism;

3. the plaintiffs' motion to amend complaint is GRANTED; and

4. the plaintiffs' claim based on the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.,* is DISMISSED.