**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

YEHUDAH-ASLAN BEN RACHAMIM
a/k/a RODERICK HARDIMAN;
MICHAEL DAVIS; and JEFFREY
SCHRECK,

     Plaintiffs-Appellants,

v.

JOE ORTIZ, Executive Director,
Colorado Department of Corrections, in
his official capacity; DONA ZAVISLAN,
Director, Office of Food Service and
Laundry Administration, Colorado
Department of Corrections, in her official
and individual capacity; BILL ZALMAN,
Director of Out-of-State and Contract
Facilities, Colorado Department of
Corrections, in his official and individual
capacity,

    Defendants-Appellees.

No. 04-1224
(D.C. No. 98-CV-2032-EWN-PAC)
(COLORADO)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Judge, **McWILLIAMS**, Senior Circuit Judge, and **HARTZ**, Circuit Judge.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On January 14, 2000, Yehudah-Aslan Ben Rachamim, a/k/a Roderick Hardiman, Michael Davis, and Jeffrey Schreck, hereinafter referred to as the plaintiffs, filed an amended complaint in the United States District Court for the District of Colorado. The defendants-appellees in this appeal are Joe Ortiz, Executive Director, Colorado Department of Corrections, in his official capacity; Dona Zavislan, Director, Office of Food Service and Laundry Administration, Colorado Department of Corrections, in her official and individual capacity; and Bill Zalman, Director of Out-of-State and Contract Facilities, Colorado Department of Corrections, in his official capacity. They will hereinafter be referred to as the defendants.[1] From the amended complaint, we learn that the plaintiffs, each of whom is Jewish, are inmates in a prison facility operated by the Colorado Department of Corrections, hereinafter referred to as CDOC. The action against the defendants is based on 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343.

The gist of the amended complaint is that the defendants, from 1998 until 2000, did not provide the plaintiffs with a kosher diet. In so doing, according to the amended complaint, the defendants violated plaintiffs' First Amendment Right to the free exercise of their religion, for which they sought monetary damages from the named defendants in their individual capacities, the amount of which would be established at trial. A second

---

[1] The plaintiffs initially filed this action *pro se* on September 21, 1998. Originally, there were other named defendants and plaintiffs' claims against those defendants were either settled or dismissed. The only defendants involved in this appeal are Ortiz, Zavislan, and Zalman.

claim was based on defendants' alleged violation of plaintiffs' equal protection rights under the Fourteenth Amendment. A third claim alleged a conspiracy by the defendants to violate plaintiffs' civil rights for the years here in question. In their "Prayer for Relief," the plaintiffs sought, *inter alia*, a permanent injunction directing the defendants to provide the plaintiffs with a kosher diet. Plaintiffs, as indicated, also prayed for money damages from Ortiz, Zavislan, and Zalman, "in an amount to be proven at trial."

After much discovery and numerous preliminary rulings by the district court, the district court entered a final judgment in the case in favor of the defendants on April 28, 2004. As concerns plaintiffs' claim for monetary damages for the time frame here involved, i.e. from February 1998 to May 2000, during which time the defendants allegedly had denied plaintiffs a kosher diet, the district court held that for that particular time period there was not a clearly established constitutional requirement that they do so. As concerns plaintiffs' request for an injunction that the defendants provide them with a kosher diet, the district court noted that since May 2000, the defendants had, in fact, been providing the plaintiffs, and all inmates similarly situated under their control, with a kosher diet, and that hence, there was no need for any injunctive order. In so doing, the district court rejected plaintiffs' suggestion that a future change in policy by the defendants might result in a refusal by the defendants to continue providing a kosher diet to plaintiffs, and others.

The backdrop for the present case is the so-called *Beerheide* trilogy. In *Beerheide*

*v. Zavaras*, 997 F.Supp. 1405 (D. Colo. 1998), *("Beerheide I")*, the United States District Court for the District of Colorado, on March 16, 1998, the year in which the plaintiffs filed their *pro se* complaint in the present proceeding, entered a preliminary injunction requiring the defendants to provide the plaintiffs in that case with kosher diets. In response thereto, the CDOC presented a so-called co-payment program to cope with its concerns of cost. On January 31, 2000, the district court in the same case entered a permanent injunction and ordered the defendants to provide kosher diets to the plaintiffs without co-pay or other conditions. *Beerheide v. Suthers*, 82 F.Supp. 2d 1190 (D. Colo. 2000), (*"Beerheide II"*). Responding to *Beerheide II*, the CDOC then instituted a program whereby Jewish inmates were provided kosher diets, without a co-pay provision. Further, pending appeal to this Court of *Beerheide II*, the defendants in that case, in May 2000, agreed to apply *Beerheide II* to all Jewish inmates in Colorado's several prisons. Accordingly, the defendants have been providing kosher diets without co-pay to the three appellants in the present case, as well as to other Jewish inmates, since May 2000. On appeal, on April 11, 2002, we affirmed *Beerheide II*. *Beerheide v. Suthers,* 286 F.3d 1179 (10th Cir. 2002), (*"Beerheide III"*). Responding to *Beerheide III*, the defendants made their earlier policy a "permanent policy" of providing kosher diets to all qualified applicants without co-pay.

In the present proceeding in the district court, the defendants filed a motion for summary judgment on the ground that they were entitled to qualified immunity because of

their reasonable belief, as of that moment in time, that they had not violated any clearly established law during the time period for which plaintiffs asked for monetary damages from these individual defendants. In this regard, the plaintiffs in their brief state that the district court erred in holding that the law requiring prisons to accommodate religious dietary needs of its inmates was not clearly established between February 1998 and May 2000, and that, in fact, such was "clearly established" at that time.

As to plaintiffs' request for an injunctive order, the defendants moved to dismiss that claim on the ground of mootness. In connection therewith, the defendants stated that they had been providing plaintiffs with kosher diets continuously since May 15, 2000 and would continue to do so and had "no intention of disobeying *Beerheide III*." The plaintiffs responded by suggesting that the defendants "could theoretically revert to its practice in effect prior to May 2000."

<u>Qualified Immunity</u>

We review an order denying or granting summary judgment on the grounds of qualified immunity *de novo*. *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). A public official, such as Ortiz, Zavislan, or Zalman, acting in his or her individual capacity, is presumed to be immune from a proceeding under 42 U.S.C. § 1983. *Schalk v. Gallemore,* 906 F.2d 491, 499 (10th Cir. 1990).[2] A public employee is

___

[2]Ortiz was sued only in his official capacity and not in his individual capacity, since he was not the Executive Director of the CDOC from 1998 to 2000. He was thereafter made Executive Director of CDOC. Hence, we are only concerned herewith

entitled to qualified immunity "in all but the most exceptional cases. . . ." *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Further, once a government official raises the question of qualified immunity, the burden of summary judgment shifts to the plaintiff, and that burden is "quite heavy." *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992).

In addition to the foregoing authorities, where a public official asserts qualified immunity as a defense to an action against him for violating a person's constitutional rights, the aggrieved party must show something more than a violation of a clearly established constitutional right. In this regard, in *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), an "excessive force" case, the Supreme Court spoke as follows:

> In this litigation, for instance, there is no doubt that *Graham v. Connor, supra*, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. <u>Yet that is not enough.</u> Rather, we emphasized in *Anderson* "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: <u>The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.</u>" 483 U.S., at 640. (Emphasis added).

As indicated, the district court granted defendants' motions for summary judgment on plaintiffs' claim for monetary damages based on defendants' failure to provide

---

whether Zavislan and Zalman are entitled to qualified immunity.

- 6 -

plaintiffs with kosher diets at no cost. In so doing, the district court concluded that any constitutional right of the plaintiffs to a kosher diet without cost was not <u>clearly</u> established for the particular time period for which they sought monetary damages, i.e. 1998 to 2000. We are in general accord with the district court's holding that for the particular period of time here involved, there was no clearly established constitutional right of a prison inmate in Colorado to a kosher diet.

In this same general connection, *see also Johnson v. Martin,* 195 F.3d 1208, 1216 (10th Cir. 1999), where we spoke as follows:

> The doctrine of qualified immunity protects public officials performing discretionary functions unless their conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In order for a law to be clearly established "'there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains.'" *Murrell v. School District No. 1, Denver, Colo.,* 186 F.3d 1238, 1251 (10th Cir. 1999)(quoting *Medina v. City & County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992)). However, we have recently recognized that the concept of clearly established law should not be applied too literally. *See id.* (rejecting the argument that qualified immunity protected school employees from sexual harassment claims under § 1983 simply "because there has previously been no case holding an individual school employee liable for sexual harassment under the Fourteenth Amendment"). Thus, "[w]e have never said that there must be a case presenting the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct." *Id.* <u>Instead, we merely require the parties to make a reasonable application of</u>

> existing law to their own circumstances. *Id.* (Emphasis added).

There is, of course, a considerable body of law, dating back a considerable length of time, on the general subject of prison accommodation to the religious tenets of its inmates. However, on the present record, as indicated, we agree with the district court that there was no clearly established constitutional right of the plaintiffs to a kosher diet free of all conditions for the years 1998 to 2000. Additionally, we also believe and hold that, in any event, the defendants made "a reasonable application of existing law to their own circumstances." Certainly it does not seem to us to have been an "unreasonable application."[3]

### Injunctive Order

As previously stated, the plaintiffs also sought an injunctive order which would direct the defendants to continue to furnish them a kosher diet at no co-pay with no other conditions, forever. The district court held that under the circumstances of the case that issue had now become moot. The record shows that the defendants in the instant case have followed the mandate of the *Beerheide* trilogy since May 2000 and there is nothing to indicate they will not continue to do so. The plaintiffs have shown nothing to indicate

---

[3] In a very recent case, *Brosseau v. Haugen*, 125 S.Ct. 596, 599 (2004), an "excessive force" case, the Supreme Court spoke as follows: "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."

As indicated, we resolve the present case on the grounds relied on by the district court.

that the present practice concerning kosher diet is likely to be discontinued.  Rather, the record shows the exact opposite.  *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975).

Judgment affirmed.


ENTERED FOR THE COURT,


Robert H. McWilliams,
Senior Circuit Judge